OPINION
Defendant-Appellant, Phillip D. Whitaker, brings this appeal from a judgment of the Court of Common Pleas of Allen County rendered pursuant to a jury verdict of guilty on one count of aggravated murder, in violation of R.C. 2903.01(A). For the reasons set forth below, we affirm the judgment of the trial court on all issues presented.
In the early morning hours of August 28, 1998, news carrier, Annis Lepper, began traveling down Kitchen Road, a secluded area of Allen County, Ohio, to deliver a newspaper to the only house on that street. As she was driving, Lepper noticed a large object lying on the left-hand side of the road that, at first glance, appeared to be a dead deer. However, after further reflection, Lepper grew concerned that the object may not have been an animal. She turned her vehicle around to drive past the object again, and, upon closer inspection, Lepper realized that it was the body of a deceased human being. Lepper immediately dialed 911 and several law enforcement officials were dispatched to the scene.
A preliminary investigation revealed that the body was that of twenty-year-old Stephanie M. Whitaker. She was found approximately 190 feet from a 1986 Nissan Maxima that appeared to have struck a utility pole. The right front portion of the vehicle sustained moderate damage and the windshield was cracked on the driver's side. Two large "drag" or skid marks extended from the vehicle to the body, which suffered several apparent injuries, including various bone fractures and lacerations to the head, neck and face. Although it initially looked as though Stephanie had been thrown from the vehicle after impact, the underside of the car, specifically the catalytic converter shield, was covered in blood, indicating that she had been run over. Investigators also noticed some type of clear packaging tape wrapped around the victim's neck.
While numerous officers remained at the crime scene to process the area and gather evidence, Sergeant James Everett and Sergeant Danny Thompson, detectives with the Allen County Sheriff's Department, were dispatched to Stephanie's residence, six and a half miles from the scene, in order to notify her next of kin. The detectives arrived at the residence at approximately 8:15 a.m. where they encountered Appellant, Stephanie's husband, and the couple's young son. As the officers approached the door, Appellant began asking where his wife was, stating that she didn't come home after the end of her shift at McDonald's that morning. The detectives then informed Appellant that his wife was dead.
On that same afternoon, Appellant consented to a search of the residence. Pursuant to the search, detectives came across an insurance policy insuring Stephanie's life in the amount of $50,000 in the event that she died as the result of an auto accident. Detectives also discovered a woman's ring in Appellant's driveway and several rolls of clear packaging tape in his garage.
At that point, Appellant became the prime suspect in Stephanie's murder. Over the next five weeks, detectives continued to gather various other pieces of evidence, apparently linking Appellant to Stephanie's death. Consequently, on October 2, 1998, Appellant was arrested and charged with aggravated murder.
In the week following Appellant's arrest, the Allen County Grand Jury returned an indictment for aggravated murder. Appellant pled not guilty to the charge and the case was eventually tried to a jury. After an eight day trial, the jury found Appellant guilty and the court sentenced him to life in prison with eligibility for parole after twenty years. Appellant then filed this timely appeal, asserting three assignments of error, which, for clarity's sake, we have chosen to address outside of their original sequence.
 Assignment of Error III The trial court committed an error of law by admitting the videotape interview resulting in plain error.
The record demonstrates that, during the course of the trial, the State of Ohio introduced into evidence a videotape portraying sergeants Everett and Thompson interrogating Appellant about the events of August 28, 1998, for approximately three and a half hours. The tape was shown to the jury in its entirety.
Included on the video were numerous statements made by the detectives regarding their opinion as to Appellant's guilt, and that his continued denials about any involvement in Stephanie's death would "not hold water" with a jury. The tape also depicted Sergeant Everett reading aloud certain portions of Stephanie's diary, which was found in the back of the Nissan, wherein she described her life with Appellant as "a living hell". The journal also conveyed Stephanie's disappointment that Appellant was frequently under the influence of alcohol or drugs. Another passage, written one week before the murder, discusses what the detectives term a "dry run" of the crime where Appellant apparently placed several items in Stephanie's car including a knife, tape and an object resembling a brick. Although Appellant never confessed to the offense or admitted to having any involvement in the events of August 28, 1998, the tape concluded with his arrest pursuant to a warrant issued by the Lima Municipal Court.
Notwithstanding this information, counsel for the defense did not enter an objection to the introduction of the interrogation tape. Thus, as Appellant's assignment of error correctly points out, any assertion that the trial court erred in admitting the tape must be analyzed under a plain error standard. Plain error does not exist unless it can be said that "but for the error; the outcome of the trial clearly would have been otherwise." State v.Getsy (1998), 84 Ohio St.3d 180, 192-193, quoting State v. Long
(1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus. Furthermore, appellate courts have been instructed to apply the plain error rule "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Long, 53 Ohio St.2d 91, 372 N.E.2d 804, at paragraph three of the syllabus.
We find that the circumstances surrounding the admission of the videotape in this case are not exceptional and thus, do not rise to the level of plain error. This is especially true in view of the overwhelming evidence of Appellant's guilt introduced by the prosecutors. This evidence consists of the fact that, despite Appellant's statements to investigators and various family members that Stephanie was not covered under any life insurance policy, the record is clear that Appellant purchased an accidental death policy from J.C. Penny Direct Marketing Services in March, 1998, just five months before his wife's death. Moreover, when investigators discovered the policy in Appellant's home, the document was opened to the page reciting that, as the beneficiary, Appellant would be entitled to $50,000 in the event that Stephanie was killed in an auto accident.
Further testimony and records from customer services representatives revealed that Appellant phoned the insurance company several times, as recently as one week prior to the incident, asking detailed questions about how much money he would receive depending on the way that Stephanie died. A representative even testified that, after explaining the policy benefits to Appellant, he then made the comment, "I'll just go kill my wife." One such phone call alarmed prosecution witness, Shanae Abrams, so much that she relayed the conversation to her supervisor and a number of co-workers.
In addition to the strong circumstantial evidence surrounding the insurance policy, many witnesses testified that Stephanie loved to wear rings, and, in fact, she usually had one on each finger. The witnesses then stated that when her shift at McDonald's ended at approximately 1:30 a.m. on August 28, 1998, Stephanie was wearing all of the rings that she customarily wore each day, including a red garnet. However, when Stephanie's body was discovered just a few hours later, the rings were not on her fingers nor were they recovered from the scene. Later that morning, investigators found the garnet ring lying in Appellant's driveway, right next to the driver's side door of his pickup truck.
Furthermore, a portion of the diary's final entry from August 22, 1998, which Appellant concedes was admissible, contains compelling evidence from the victim. In that entry, Stephanie wrote that she was frightened that her husband would try to kill her or harm her to the point where she'd "never come back."
In light of this evidence, we conclude that the admission of the videotape did not constitute plain error. Accordingly, Appellant's third assignment of error is not well taken and must be overruled.
 Assignment of Error II The trial court committed an error of law by admitting other acts evidence.
In support of this assignment of error, Appellant points to testimony elicited from various witnesses in the prosecution's case-in-chief to argue that the trial court improperly admitted evidence of Appellant's character and of prior bad acts, in contravention of Evid.R. 404. Based upon the status of the record, we conclude otherwise.
Initially, it must be noted that, upon a thorough review of the transcript, it is apparent that most of the evidence Appellant complains of was not objected to at trial. Thus, as we discussed in the previous assignment of error, the issue may only be examined under the plain error doctrine, which is not applicable unless this court can find that, but for these alleged errors, the jury clearly would have entered an acquittal. See, e.g. State v.Getsy, supra, 84 Ohio St.3d at 192-193.
This evidence includes testimony regarding Appellant's frequent arguments with Stephanie; that he only married his wife because she gave birth to his child; that he began drinking heavily after the 1997 marriage; that he went to the mall to purchase shoes for work the day he found out about Stephanie's death; and that Appellant had an affair about a month after his wedding. Assuming that this and other similar testimony can even be classified as character or other acts evidence, we do not find that its admission rises to the level of plain error. The overwhelming evidence of guilt that was highlighted in our prior discussion precludes us from properly employing the plain error doctrine.
It also must be noted that even though trial counsel lodged objections to certain testimony elicited from prosecution witnesses Matt Stableton, Jennifer Shannon, and Bobbie Daigle, we find that these objections failed to preserve the asserted error for review on appeal. In particular, trial counsel formed the objections by stating that the witnesses' testimony was either irrelevant, prejudicial or based upon hearsay. The transcript reveals that Appellant's attorney never argued against admissibility because of improper character or other acts evidence. Thus, absent plain error, we must overrule Appellant's assertion that the court erred in admitting other acts evidence.
In support of our holding, we point to Evid.R. 103(A), which states, in pertinent part:
 (A) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
 (1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record stating the specific ground of objection, if the specific ground was not apparent from the context; [Emphasis added.]
We also refer to relevant, analogous pronouncements made by the Ohio Supreme Court. For instance, in State v. Davis (1964),1 Ohio St.2d 28, paragraph two of the syllabus, the Court held the following:
 Where counsel for an accused objects to admission of a confession on the specific ground that it was not voluntarily made and there is no evidence to support a conclusion that it was not voluntarily made, the accused cannot, after trial, successfully maintain that the court erred in overruling the objection by then relying upon a valid ground for his objection which was not called to the court's attention at a time when such error could have been avoided and corrected.
Subsequent to the Davis decision, the Court issued State v.Carder (1966), 9 Ohio St.2d 1, 11, where it was held that an objection as to the admissibility of certain evidence, made exclusively on one ground at trial, precluded a successful appeal based upon an entirely separate ground. Therefore, based upon the aforementioned authorities, we find that, in the instant case, counsel for the defense failed to preserve any error with respect to Evid.R. 404. See also, State v. Oden (Apr. 6, 1983), Hamilton App. No. B-780167, unreported. Additionally, as we have already stated, plain error cannot be applied in this case to circumvent the result of such a waiver.
While this ends our analysis on the issue of character and other acts evidence, we note that Appellant also appears to make a perfunctory argument that the testimony was either irrelevant or, if relevant, its probative value substantially outweighed the danger of unfair prejudice. See Evid.R. 401 and 403(A). We will address this issue only as it relates to the evidence to which a proper objection was entered.
This evidence includes testimony that Appellant frequently left the couple's young son unattended for a period of one hour or more while visiting friends; that in a relatively short span of time before the murder, Stephanie often came to work upset and with bruises; and that Appellant denied paternity of his son prior to his marriage to Stephanie. With respect to the issue of relevancy, we find that, pursuant to Evid.R. 401, this testimony makes the question of identity of the perpetrator more probable since it tends to demonstrate Appellant's tumultuous relationship with his wife and the fact that he had no problem leaving his child, whom he was babysitting on the morning of the murder, while attending to other matters. Thus, we conclude that the trial court did not abuse its discretion in admitting the evidence over counsel's objection. See State v. Heinish (1990), 50 Ohio St.3d 231,239.
Similarly, we find that the trial court did not abuse its discretion in admitting the evidence concerning the denial of paternity and neglect of the child because the probative value of such testimony was not substantially outweighed by the danger of unfair prejudice. See Evid.R. 403(A). However, with respect to the evidence that Appellant physically abused his wife, we conclude that the trial court did abuse its discretion in admitting it over counsel's objections. Indeed, from this, one could infer that if Appellant had no qualms about beating his wife, he certainly had the emotional wherewithal to kill her. The interjection of this evidence into the trial was clearly meant to inflame the passions of the jury and paint Appellant as a "wife beater", a despicable figure in today's society. See generally,State v. Caitlin (1990), 56 Ohio App.3d 75.
Nonetheless, although we find that the trial court erred in allowing the jury to hear this testimony, we are convinced that this error was harmless beyond a reasonable doubt. This conclusion is based upon our prior determination that the remaining evidence contains overwhelming proof of Appellant's guilt. See State v. Sage (1987), 31 Ohio St.3d 173, 181.
For these reasons, Appellant's second assignment of error is overruled.
 Assignment of Error I The Appellant was denied the effective assistance of counsel in violation of his rights under the Sixth and Fourteenth amendments to the United States Constitution and Section 10, Article 1 of the Ohio Constitution.
The appropriate test to determine whether an accused has been denied the effective assistance of counsel has been outlined as follows:
 First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate * * * there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness.
State v. Lytle (1976), 48 Ohio St.2d 391, 396-397, vacated in part on other grounds (1978), 438 U.S. 910. See also, State v. Bradley
(1989), 42 Ohio St.3d 136, 141-142; Strickland v. Washington
(1984), 466 U.S. 668, 687. Additionally, in order to demonstrate prejudice, an appellant must be able to show that, within a reasonable probability, the result at trial would have been different had it not been for counsel's mistakes. Bradley,42 Ohio St.3d 136, 143.
Appellant argues herein that he was denied the effective assistance of counsel for three primary reasons: "(A) [failure] to move for suppression of portions of a videotape that included written statements of the victim; (B) [failure] to object to numerous instances of hearsay testimony; and (C) [failure] to object to the admission of prior bad acts or improper character evidence." We find these assertions to be without merit.
Even if we were to assume, for the sake of argument, that counsel's failure to object to these various pieces of evidence could be attributed to the violation of his essential duties and not mere trial tactic, Appellant cannot satisfy the prejudice prong of the above quoted test. Despite Appellant's contention that the jury would have acquitted him of aggravated murder without the evidence at issue, we find otherwise. Again, as we have previously stated, the record demonstrates other overwhelming evidence of guilt that, standing alone, was sufficient to render a conviction on the charge contained in the indictment.
Accordingly, Appellant's first assignment of error is overruled.
Having found no error prejudicial to the Appellant herein, in the particulars assigned and argued, the judgment of the trial court is hereby affirmed.
Judgment affirmed.
HADLEY, P.J., and BRYANT, J., concur.